From: LFGNotifications@LFG.com
Sent: Friday, November 10, 2023 8:20:36 AM
To: JOHN@FARMERDREISER.COM;
CC:
BCC:
Subject: [Send Secure]Walmart, Inc. Claim No. 10784870 Roberta Galyon
Attachments: vctse5euyjd1kdknxce3_16538818.pdf;

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

2

Lincoln/Galyon 0090

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 10, 2023

John P. Dreiser
The Dreiser Law Group, LLC
1356 PAPERMILL POINTE WAY
KNOXVILLE, TN 37909

RE: Long Term Disability (LTD) Benefits
Walmart, Inc.
Claim #: 10784870
Claimant: Roberta Galyon

Dear John Dreiser:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Walmart, Inc.'s Group Disability Policy. We are writing in reference to the claim for LTD benefits under the Policy on behalf of Roberta Galyon.

We have completed our review of your request for reconsideration of the claim for Long Term Disability (LTD) benefits. Based on the information contained in the claim file we are unable to alter the determination to deny further benefits beyond December 11, 2022.

**Initial Claim Decision**

Ms. Gaylon submitted a claim for her absence from work as of June 13, 2020. Her LTD benefits began on December 12, 2020, therefore the change in definition of disability occurred on December 12, 2022 and to receive benefits beyond 24 months she must be disabled from any occupation as defined in the Policy. Benefits beyond December 11, 2022 were denied as the evaluation concluded she was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated December 7, 2022. Ms. Galyon was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, she was advised to submit the following information: In your request for review, please include the following: *The reasons you feel the decision to discontinue LTD coverage is incorrect; medical Records from Dr. Gabriel and all other treating providers. Additionally, please provide medical documentation from any providers not listed above that supports your inability to return to any occupation on a full-time basis. This information should include office treatment notes, test results, imaging, or any medical consultations; as well as any additional comments, documents, records, or other information, including any Social Security decision or records you may have*

*received that you feel will support your claim.*

**Appeal**

Correspondence was received from your office dated December 27, 2022 noting you had been retained from Ms. Galyon for the denial of her continued disability. You noted that your office would be providing additional evidence and will request a formal appeal in due time. You asked for a copy of Ms. Galyon's complete claim file. You provided a notice of authorization, lien and payment instructions, limited power of authority and authorization to release medical records, information, and data.

In your written request for appeal dated May 31, 2023 you asked that the letter was accepted as a request for an administrative appeal of Ms. Galyon's denial based on the Consulting Physician report no longer limiting Ms. Galyon physically from working at a sedentary occupation. You noted you had provided a disc containing additional medical evidence. You documented the history from the visit with Dr. Harold Cate, orthopedic surgeon dated January 20, 2023, imaging of the left knee, and her documentation from her March 9, 2023 return visit. You also noted that she treated with Dr. Edmunds for dysphagia and loose / urgent stools and you noted that she has been "dealing with moderate-to-severe hemodynamically significant left internal carotid artery stenosis and hiatal hernia.

You concluded that the additional documentation along with the previously obtained information demonstrates that Ms. Galyon is unable to work at even the sedentary exertional level.

Correspondence was received from your office on May 15, 2023

A delivery confirmation notice was received dated June 6, 2023.

> *Medical documentation was received from Tennessee Orthopaedic Clinics, Dr. Harold Cates. Medical documentation was received from Dr. Cates dated October 6, 2022, January 20, 2023, March 9, 2023. Ms. Galyon was seen for complaints of right knee pain status post right total knee manipulation with aspiration on January 17, 2022. She was using a cane occasionally for stability and a CPM machine. She reported increased stiffness and progressively losing range of motion. She reported no improvement and difficulties with sitting for prolonged periods. She was requesting to undergo surgery for resolution of her symptoms.*
>
> *Medical documentation was received from Edmunds Gastroenterology, Megan Schleigh, NP. Ms. Galyon was seen for dysphagia and loose and urgent stools. She was seen by Dr. Edmunds on October 14, 2022 and December 19, 2022 for a consultation with a known history of hiatal hernia status post repair May 2021 and May 2022 and for follow up. Her right upper quadrant ultrasound from November 16, 2022 revealed hepatic steatosis and cholecystectomy. Her EGD and colonoscopy from November 23, 2022 revealed stage 1 internal hemorrhoids. She was noted to be doing relatively well with the exception of ongoing dysphagia. Her*

*esophagus was only noted to contract 50% of the time and she was noted to have ongoing bowel urgency. She did not wish to be on medication. She was instructed to follow up as needed.*

*Medical documentation was received from StatCare Pulmonary Consultants Athens, Ms. Gabriel Greene, PA-C. Ms. Galyon presented May 31, 2022 after a referral from her primary care provider for obstructive sleep apnea diagnosed 2015 with most recent sleep study in 2017. She was not using her C-PAP machine, she last used in 2018. She was seen September 20, 2022 for follow up after receiving her C-PAP machine. She was seen July 22, 2022 having difficulty with insomnia and excessive daytime sleepiness. She was putting her C-PAP on 87% of the time. Her residual AHI was well controlled. She felt she was not benefiting from C-PAP. She was encouraged to continue use of the C-PAP machine, set at 6 cm H2O, she was also prescribed Melatonin. Her restless leg syndrome was noted to be well controlled. She was to follow up in three months. Polysomnogram report was received dated June 14, 2022.*

Additional documentation was received dated June 16, 2023 noting that you had provided additional documentation from Dr. Kyle Kleppe for Ms. Galyon's appeal.

*The October 13, 2022 visit was received noting Ms. Galyon presented following a barium swallow. She was status post robotic assisted laparoscopic hiatal hernia repair with partial fundoplication on May 18, 2022. Her barium swallow was performed on July 21, 2022. She reported similar symptoms and having chest pain. It was noted that she was evaluated by cardiology who stated that her heart was fine. She reported daily pain occasionally associated with abdominal pain with painful diarrhea. Her examination noted a present abdominal scar with no abdominal guarding or abdominal muscle rigidity. She exhibited direct epigastric tenderness. No incisional or ventral hernia was noted. The remainder of her examination was unremarkable. Her diagnoses included dysphagia and epigastric abdominal pain. In regard to her dysphagia her manometry showed some inadequate clearance and weak strength. Her testing did not reveal that her hiatal hernia repair was too tight. Additional testing was recommended including a gastric emptying study and EGD with BRAVO study. She was seen January 3, 2023 for dysphagia. She was status post hiatal hernia repair in May 2021 and May 2022. She presented with periodic dysphagia occurring more often with solids. It was documented that her EGD and colonoscopy was normal and her gastric emptying study showed normal solid phase without reflux or hiatal hernia. The high resolution manometry did show some esophageal dysmotility. It was opined that her dysphagia was likely secondary to esophageal dysmotility. Her October 2022 gastric emptying study and your July 2022 high resolution esophageal motility study were received.*

Correspondence was received from your office dated August 21, 2023 noting you had provided medical evidence from Dr. Harold Cates to consider for the appeal including the May 30, 2023, and

August 8, 2023, office visits, lab results, and April 18, 2023 operative report.

Correspondence was received from your office dated August 29, 2023 noting all medical records to be considered regarding the appeal for Ms. Galyon.

> *Medical documentation was received from Tennessee Orthopaedic Clinics, Dr. Harold Cates. Ms. Galyon was seen March 9, 2023 for right knee pain. Ms. Galyon was seen March 9, 2023 for right knee pain, status post right total knee manipulation on January 17, 2022. She was ambulating with a cane occasionally for stability. Her motion was noted to not have improved and she was having difficulties sitting for prolonged periods of time. She had increased knee stiffness and it was documented that she was progressively losing range of motion and she was occasionally limping with ambulation. She was utilizing Meloxicam which was noted to be helpful occasionally. She was also taking Baclofen for pain relief. She was documented to have crepitation in the lateral gutter of the knee ad she reported increased stiffness in the right knee. Her examination noted range of motion 0-105 degrees in the right knee and 0-115 degrees in the left knee, negative effusion, mild medial joint lint tenderness on the right, negative extensor lag, posterior drawer, anterior drawer, and lateral joint line tenderness. Her gait was cautious on the right with normal motor strength and sensation. Imaging revealed moderate-to-severe lumbar degenerative changes consistent with arthritic changes and arthritis changes to the coccyx and lumbar spine with relatively preserved joint space. Right knee arthroscopic lysis of adhesions with closed manipulation and some therapy was recommended. Her right knee symptoms were noted to affect her quality of life. She was seen May 30, 2023 by Katrina Aberdeen, APRN for right knee pain follow up. She was status post-surgical intervention on April 18, 2023. She reported her knee was no better. She had not gone to physical therapy due to a death in the family. She was not using any assistive device for ambulation. She had complaints of tightness and stiffness. Her examination revealed her range of motion was 0-95 degrees with trace effusion and no edema. She was prescribed a Prednisone Dosepak to follow up with Meloxicam. She was seen August 8, 2023 with complaints of continued pain and symptoms including stiffness and soreness. She reported some muscle weakness and being diagnosed with Chiara malformation. Her examination noted 0-105 degrees of range of motion in the right knee, 0-120 degrees in the left knee. She was negative for medial joint line tenderness, extension lag, crepitation, posterior and anterior drawer testing, and lateral joint line tenderness. She exhibited normal motor strength and sensation. Imaging of the right knee noted good position with no loosening or lysis and a well centered patella. Imaging of the left knee noted no significant abnormalities.*
>
> *Her April 18, 2023 operative report was received noting right knee arthroscopic lysis of adhesions and close manipulation.*
>
> *Medical documentation was received from The University of Tennessee Medical*

*Center. Dr. Michael Freeman including a carotid artery duplex reports dated April 17, 2017, October 16, 2017, March 4, 2020, December 30, 2020, December 22, 2021 and April 26, 2021, office visit notes dated March 4, 2020, March 5, 2020, March 8, 2020, August 3, 2020, December 30, 2020, December 22, 2021, and April 26,2021, for left elbow and hand numbness, leg pain, follow up for carotid vascular disease, complaints of headaches with floaters in both eyes, right lower extremity numbness and pain and recent diagnosis of hiatal hernia.*

**Initial Evaluation**

A medical review was completed January 26, 2021 by Dr. Richard Avioli, Board Certified in Orthopedic Surgery. Dr. Avioli concluded that Ms. Galyon's impairing condition as of her date of disability was arthritic right knee pain due to advanced medial compartment osteoarthritis, status post cemented uni-compartmental hemiarthroplasty by Dr. Holt on June 16, 2020. Ms. Galyon had persistent right knee pain, slowly improving. She was status post Euflexxa injections on the right knee in December 2020. Ms. Galyon also developed left knee pain due to lateral meniscal tear treated with a left arthroscopy with partial lateral meniscectomy and abrasion chondroplasty of the patella on December 4, 2020. Ms. Galyon was noted to have grade four chondromalacia of 60% of her patella. As of her December 2020 she was doing well in regard to her left knee. Ms. Galyon was noted to have comorbid conditions of myotonic disorder of the bilateral lower extremities, chronic refractory migraine headaches, depression, anxiety, diabetes, obstructive sleep apnea, obesity, fibromyalgia, and type 1 Arnold Chiari malformation. Ms. Galyon also reported low back pain due to lumbar stenosis; however, in Dr. Nodit's September 30, 2020 visit it was noted that her cervical, thoracic, and lumbar spine scans were unremarkable. It was opined that Ms. Galyon had no work capacity at that time with restrictions and limitations to include frequent sitting, occasional standing, walking, climbing stairs, squatting, kneeling, stooping, bending, and twisting and no pushing, pulling, or lifting greater than five pounds on an occasional basis. Her estimated work capacity after recovery was noted to be in the light physical demand level.

A medical review was completed November 27, 2022 by Dr. R. Asaro, Board Certified in Physical Medicine and Rehabilitation.

Dr. Asaro noted that Ms. Galyon has a past medical history of diabetes, coronary artery disease, hyperlipidemia, anxiety, depression, fibromyalgia, hypertension, anemia, obesity, sleep apnea, asymptomatic Chiari Malformation I, osteoarthritis, status post right knee replacement June 16, 2020, revised right total knee replacement on October 5, 2021 and right total knee manipulation under anesthesia on January 17, 2022. Ms. Galyon presented with persistent knee pain. On August 21, 2020 she discussed going on medical leave due to low back pain, leg weakness, and persistent right knee pain. Her EMG revealed sensory, axonal greater than demyelinating peripheral neuropathy and underlying myopathy. Her workup with neurology was negative. She had complaints of muscle spasms and cramps and was prescribed Baclofen.

Her medical records noted lack of improvement with her right knee pain. She was provided steroid injections and Euflexxa injection to the right knee weekly in December 2020. She reported to her neurologist on January 25, 2021 that she was having muscle cramps in her hands and feet with no new weakness. She also had fluctuating back pain. She was also noted to have rebound headache, depression, and anxiety per her neurologist. She was administered a right trochanteric bursa

injection and a right pes anserine bursa injection on March 29, 2021. Ms. Galyon had a right total knee manipulation under anesthesia and reversed right total knee replacement due to persistent pain.

Due to Ms. Galyon recovering from surgery, it was opined that the medical supported restrictions and limitations of mostly sitting with occasional standing and walking and lifting limited to ten pounds through March 27, 2022 and for an additional six to eight weeks.

Additional medical documentation noted evaluation for a hiatal hernia on March 31, 2022 and chest pain evaluation with cardiologist on April 5, 2022. She was seen by her primary care provider on May 11, 2022 for medication refill and follow up for her chronic medical conditions. She exhibited a normal gait and normal musculoskeletal and neurological examination. She was referred to sleep medicine for renewal of her C-PAP and a mammogram as part of her screening examinations. An operative report was received dated May 18, 2022 for robotic laparoscopic recurrent hiatal hernia repair. No restrictions and limitations were provided for her hernia repair, this was referred for another specialist.

A form was completed June 21, 2022 by Dr. Timothy Collins, Family Medicine, noting Ms. Galyon had sedentary capacity with no lifting or walking, headaches, and fibromyalgia. Restrictions were imposed from June 12, 2020 to the present as she had multiple follow ups with orthopedics and neurosurgery. His examination noted she was in no acute distress, ambulating normally. She had normal muscle strength and tone, no bony abnormalities or tenderness, she had normal movement in all extremities, no edema, intact sensations, and normal gait and station.

Ms. Galyon was seen for postoperative evaluation for dysphagia on July 21, 2022 and testing revealed 50% swallowing weakness. She also was diagnosed with skin cancer by a dermatologist on September 29, 2022 with positive biopsies for infiltrating basal cell carcinoma. She was referred for a barium swallow study and referral to gastroenterology due to continued difficulty swallowing. She was seen October 14, 2022 and referred for an EGD and colonoscopy. She had Mohs surgery around her nose on October 31, 2022 to remove the basal cell carcinoma. The last correspondence received from gastroenterology was a partial note dated November 8, 2022 ordering blood work.

Dr. Asaro concluded that the supported restrictions and limitations included mostly sitting with occasional standing or walking with an assistive device as needed and lifting to ten pounds from January 1, 2022 to March 17, 2022 and for an additional six to eight weeks, but not beyond, from a musculoskeletal perspective. Dr. Asaro noted it was beyond the reviewers expertise to comment on restrictions and limitations related to the hernia repair on May 18, 2022 and the surgical removal of the basal cell carcinoma on October 31, 2022. It was recommended that the claim was referred to the appropriate specialist for further clarification.

A Transferable Skills Analysis was completed based on the findings of the medical assessment and the analysis identified occupations within Ms. Galyon's physical abilities and identified skill level to include Telephone Solicitor, and Surveillance System Monitor.

**Appeal Evaluation**

During the review of your appeal, a medical review was completed October 11, 2023 by Dr. Becker, Board Certified in Internal Medicine and Rheumatology. Attempts were made to reach Dr. Kyle Kleppe, Dr. Edmunds, Gabe Greene PA, and Dr. Timothy Collins; no contact was established.

Dr. Becker concluded that the primary impairing diagnosis was right knee pain, history of left knee meniscal tear, diabetes mellitus type 2, carotid artery stenosis, obstructive sleep apnea, hiatus hernia repair, and steatosis – hepatic. It was opined that there was no clinically relevant impairment that would require restrictions or limitations in the work environment. It was noted that Ms. Galyon mentioned pain in her right knee but there was no imaging studies, physical examinations or other relevant descriptions offered.

Her diagnostics included an ultrasound that revealed a fatty liver but no specific impairment, and EMG and nerve conduction study without findings that would translate to restrictions and limitations. She had a hernia repair and subsequent testing has been within normal limits.

A medical review was completed October 11, 2023 by Dr. Andrew Nava, Board Certified in Physical Medicine and Rehabilitation. Attempts were made to reach Dr. Harold Cates; no contact was established.

Based on the review of the medical documentation Dr. Nava concluded that the primary impairing diagnoses were other tear of lateral meniscus, current injury, left knee. Dr. Nava noted Ms. Galyon has a history of right total knee arthroplasty on June 16, 2020, left knee arthroscopic partial lateral meniscectomy, chondroplasty of the patella, grade four lesion, 60%, on December 4, 2020 and right knee arthroscopic lysis of adhesions and close manipulation on April 18, 2023.

The medical evidence noted no abnormal findings related to the upper extremity or the spine and there was no evidence of complete neurological dysfunction or extended hospitalizations to support complete disability unless otherwise stated. It was noted that Ms. Galyon was restricted to no work capacity from the surgery date of April 18, 2023 for six weeks postoperatively.

It was opined that impairment was supported from December 11, 2022 to the present as the medical documentation noted cautious ambulation, pain, swelling, and decreased range of motion. She also had intermittent use of a cane. Supported full time restrictions and limitations included standing and walking no more than two hours with an assistive device, unrestricted sitting, pushing, pulling, carrying, and lifting up to ten pounds occasionally, occasional bending, stooping, kneeling, and climbing stairs, and unrestricted keyboarding, mousing, typing, gripping, grasping, and reaching. Restrictions were supported through February 2024.

A response was received from Dr. Harold Cates October 13, 2023 noting a stiff right knee with muscle weakness and limitation to no lifting greater than 20 pounds and no ladders, permanent restrictions. Dr. Cates noted Ms. Galyon's treatment plan was physical therapy and pain control.

Correspondence was sent to your office dated October 17, 2023 providing copies of the medical assessments completed on appeal. Your office was provided until November 6, 2023 to provide a response. No response was received.

Based on the findings of the medical reviews conducted and the alternate occupations identified on

the prior Transferable Skills Analysis, the occupations of Telephone Solicitor and Surveillance System Monitor would still be viable.

In our review of the claim, The Lincoln National Life Insurance Company did fully consider the Social Security Administration's ruling to approve Social Security Disability Income benefits. It should be noted, however, that while we fully considered the Social Security Administration's ruling, the decision by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of the Walmart, Inc.'s Group Disability Income Policy. Moreover, The Lincoln National Life Insurance Company has obtained and considered medical and vocational assessments that were not considered by the Social Security Administration in its determination process.

**Conclusion**

We conducted a thorough and independent review of the entire claim. In summary, we acknowledge that Ms. Galyon may have continued to experience some symptoms associated with her condition beyond December 11, 2022. However, the information does not contain significant examination findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills from December 12, 2022 to April 17, 2023 and from May 30, 2023 forward as Ms. Galyon was supported from April 18, 2023 to May 29, 2023 due to her surgical intervention. However, we are evaluating her claim as of December 12, 2022.

Having carefully considered all of the information submitted in support of the claim, our position remains that proof of continued disability in accordance with the Policy provisions after December 11, 2022 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*

*1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:*

- *i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
- *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

*"**Material and Substantial Duties**", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by The Lincoln National Life Insurance Company and to submit any additional information he wished to be considered as part of the appeal. The Lincoln National Life Insurance Company has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by The Lincoln National Life Insurance Company and the claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to the claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Walmart, Inc.'s Group Disability Income Policy contains the below provisions:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*

2. *more than three years after the time Proof of claim is required.*

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Your employer's policy has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is December 11, 2025.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any The Lincoln National Life Insurance Company rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by The Lincoln National Life Insurance Company are based on the provisions outlined in Walmart, Inc.'s Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact The Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shiká a'doowoł nínízingo saad hosiníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozigíí hazho'ó bík'idi'deeshtįįł nínízingo dóó bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jerronda King
Claims Resolution Specialist
Phone No.: (888) 437-7611 Ext. 14674
Secure Fax No.: (603) 334-0401